The PEOPLE of the State of
Colorado, Petitioner

v.

Jerad Allen PICKERING, Respondent.

No. 10SC446.

Supreme Court of Colorado,
En Banc.

Sept. 12, 2011.

John W. Suthers, Attorney General, John J. Fuerst, III, Senior Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado Attorneys for Petitioner.

Douglas K. Wilson, Public Defender, Ryann S. Hardman, Deputy Public Defender, Denver, Colorado, Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

We review the court of appeals' decision in *People v. Pickering*, No. 07CA2322, 2010 WL 1099750 (Colo.App. Mar. 25, 2010) (not selected for official publication), reversing respondent Jerad Allen Pickering's conviction for reckless manslaughter. The court of appeals, relying on *People v. Lara*, 224 P.3d 388 (Colo.App.2009), *cert. denied*, No. 09SC906, 2010 WL 427605 (Colo. Feb. 8, 2010) and *People v. Taylor*, 230 P.3d 1227 (Colo.App. 2009), *cert. denied*, No. 10SC102, 2010 WL 2026523 (Colo. May 24, 2010), held that the trial court's self-defense jury instructions impermissibly shifted the burden of the Petitioner, the People of the State of Colorado ("People"), to prove beyond a reasonable doubt that Pickering acted recklessly. We conclude that the trial court's instruction to the jury did not shift the People's burden, and accordingly reverse the judgment of the court of appeals and overrule the contrary rules announced in *Lara* and *Taylor*.

## I. Facts and Procedural History

Pickering and his friend, Jesse Bates, went to the apartment of another friend, Eugene Morgan, where Morgan and two other men, Leon Villarreal and Jose Torres, were present. An argument ensued between Pickering, Bates, Morgan, and Villarreal, leading to a fight during which Pickering allegedly stabbed Villarreal to death. The People charged Pickering with second-degree murder under section 18–3–103(1), C.R.S. (2010).[1] At trial, Pickering's counsel asserted that Pickering acted in self-defense.

The trial court gave an elemental jury instruction on second-degree murder, which required the People to prove beyond a reasonable doubt that Pickering had knowingly

---

1. The People also charged Pickering with second-degree assault with a deadly weapon under section 18–3–203(1)(b), C.R.S. (2010).

caused Villarreal's death and that Pickering did not act in self-defense. The trial court gave another elemental instruction on the lesser-included charge of reckless manslaughter, which required the People to prove beyond a reasonable doubt that Pickering recklessly caused Villarreal's death. The latter instruction made no mention of self-defense. The trial court then gave a carrying instruction explaining the interaction between self-defense and the knowing and reckless requirements of the respective charges, and another instruction defining self-defense.

The jury found Pickering guilty of reckless manslaughter under section 18–3–104(1)(a), C.R.S. (2010), a lesser-included charge of second-degree murder,[2] and Pickering appealed to the court of appeals. The court of appeals reversed the conviction, focusing on a portion of the carrying instruction that stated, pursuant to the language of section 18–1–704(4), C.R.S. (2010), that "the [People] do[ ] not bear the burden of proving beyond a reasonable doubt that [Pickering] did not act in self-defense with respect to [the reckless manslaughter] charge." The court of appeals concluded that the instruction could have led the jury to misunderstand the relationship between recklessness and self-defense and find Pickering guilty of reckless manslaughter even if it concluded that the People failed to prove that he did not act in self-defense. The People petitioned for, and we granted, certiorari review of the court of appeals' decision.[3]

## II. Analysis

■ Under both the United States and Colorado Constitutions, due process requires the trial court to properly instruct the jury on every element of the substantive offense with which the defendant is charged so the jury may determine whether all the elements have been established beyond a reasonable doubt. *Griego v. People,* 19 P.3d 1, 7 (Colo. 2001) (citing U.S. Const. art. III, § 2, cl. 3;

U.S. Const. amend. VI; U.S. Const. amend. XIV, § 1; Colo. Const. art. II, §§ 16, 23 and 25; *Bogdanov v. People,* 941 P.2d 247, 252 (Colo.1997); *People v. Snyder,* 874 P.2d 1076, 1080 (Colo.1994)). How a defense is conceptualized in relation to the elements of a crime depends on the type of defense.

### A. Types of Defenses

■ There are, generally speaking, two types of defenses to criminal charges: (1) "affirmative" defenses that admit the defendant's commission of the elements of the charged act, but seek to justify, excuse, or mitigate the commission of the act; and (2) "traverses" that effectively refute the possibility that the defendant committed the charged act by negating an element of the act. *See People v. Huckleberry,* 768 P.2d 1235, 1238 (Colo.1989) (citations omitted); *see also People v. Miller,* 113 P.3d 743, 750 (Colo. 2005) (further explaining the distinction between affirmative defenses and traverses). In Colorado, if presented evidence raises the issue of an affirmative defense, the affirmative defense effectively becomes an additional element, and the trial court must instruct the jury that the prosecution bears the burden of proving beyond a reasonable doubt that the affirmative defense is inapplicable. *See* § 18–1–407, C.R.S. (2010); *Huckleberry,* 768 P.2d at 1238 (citations omitted). If, on the other hand, the presented evidence raises the issue of an elemental traverse, the jury may consider the evidence in determining whether the prosecution has proven the element implicated by the traverse beyond a reasonable doubt, but the defendant is not entitled to an affirmative defense instruction. *See Huckleberry,* 768 P.2d at 1238.

### B. Self–Defense

■ With respect to crimes requiring intent, knowledge, or willfulness, such as second-degree murder, self-defense is an affirmative defense. *See People v. Toler,* 9 P.3d

2. The jury also found Pickering guilty of second-degree assault.

3. Specifically, we granted certiorari to consider: Whether the court of appeals erred in reversing respondent's conviction for reckless manslaughter because the trial court instructed the

jury pursuant to section 18–1–704(4), C.R.S. (2010), that the prosecution does not bear the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. The court of appeals also remanded for resentencing and reclassification of the second-degree assault conviction, an issue not before us here.

341, 345–46 n. 5 (Colo.2000). For example, it is possible for a person to knowingly cause the death of another, thus satisfying the basic elements of second-degree murder under section 18–3–103(1), but to nevertheless do so in self-defense as defined under section 18–1–704, and therefore not be guilty of second-degree murder. Accordingly, if a defendant charged with such a crime raises credible evidence that he acted in self-defense, or if the prosecution presents evidence raising the issue of self-defense, the prosecution bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, and the trial court must instruct the jury accordingly.

■ With respect to crimes requiring recklessness, criminal negligence, or extreme indifference, such as reckless manslaughter, self-defense is not an affirmative defense, but rather an element-negating traverse. *See Case v. People,* 774 P.2d 866, 869–71 (Colo. 1989); *People v. Fink,* 194 Colo. 516, 518–19, 574 P.2d 81, 83 (1978); *People v. Fernandez,* 883 P.2d 491, 493 (Colo.App.1994) (citing *Case,* 774 P.2d 866; *Fink,* 194 Colo. 516, 574 P.2d 81). Essentially, acts committed recklessly or with extreme indifference or criminal negligence are "totally inconsistent" with self-defense. *See Fink,* 194 Colo. at 518, 574 P.2d at 83. For example, it is impossible for a person to act both recklessly and in self-defense, because self-defense requires one to act justifiably, section 18–1–704(1), while recklessness requires one to act with conscious disregard of an unjustifiable risk, section 18–1–501(8), C.R.S. (2010). In *Fink,* this Court held that it was sufficient for trial courts presiding over such charges simply to allow defendants to present evidence of self-defense, properly instruct juries on the definitions of recklessness or criminal negligence, and not give any specific instructions on self-defense, all under the assumption that

juries would understand the relationship between self-defense and the elemental requirements of recklessness, criminal negligence, and extreme indifference. *See* 194 Colo. at 518–19, 574 P.2d at 83.

The General Assembly addressed the issues raised in Fink by enacting section 18–1–704(4).[4] The first clause of section 18–1–704(4) codifies *Fink* in part, requiring trial courts, in accordance with the United States Supreme Court's holding in *Martin v. Ohio,* 480 U.S. 228, 233–34, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), to permit defendants accused of crimes to which self-defense is not an affirmative defense—i.e., those involving recklessness, extreme indifference, or criminal negligence—to nevertheless present evidence of self-defense. The second and third clauses abrogate *Fink* to a limited extent by requiring trial courts to instruct the jury in such cases regarding the law of self-defense and to explain to the jury that it may consider evidence of self-defense in determining whether a defendant acted recklessly or with extreme indifference or with criminal negligence. Finally, the fourth clause, at issue here, clarifies that the self-defense law instruction required in such cases is not an affirmative defense instruction and that the prosecution does not bear the burden of disproving self-defense.[5]

In *Lara,* a case involving a charge of first-degree murder and a charge of extreme indifference murder, the trial court instructed the jury, tracking the language of the fourth clause of section 18–1–704(4), that the prosecution did not bear the burden of disproving self-defense. 224 P.3d at 392, 394. The court of appeals held that, by proving extreme indifference, the prosecution necessarily disproves self-defense because of the mutually exclusive nature of extreme indifference and self-defense. The

---

**4.** The statute reads:

In a case in which the defendant is not entitled to a jury instruction regarding self-defense as an affirmative defense, the court shall allow the defendant to present evidence, when relevant, that he or she was acting in self-defense. If the defendant presents evidence of self-defense, the court shall instruct the jury with a self-defense law instruction. The court shall instruct the jury that it may consider the evidence of self-defense in determining whether

the defendant acted recklessly, with extreme indifference, or in a criminally negligent manner. However, the self-defense law instruction shall not be an affirmative defense instruction and the prosecuting attorney shall not have the burden of disproving self-defense. This section shall not apply to strict liability crimes.

§ 18–1–704(4).

**5.** The statute's fifth clause regarding strict liability crimes is not relevant here.

court of appeals then reasoned that instructing the jury, pursuant to the fourth clause of section 18–1–704(4), that the prosecution did not bear the burden of disproving self-defense might imply that the prosecution did not bear the burden of proving extreme indifference, an essential element of the charged crime. *See id.* at 394–95. Accordingly, the court of appeals concluded that the instruction unconstitutionally shifted the prosecution's burden of proving extreme indifference to the defendant. *Id.* at 395.[6] In *Taylor*, the court of appeals affirmed and extended *Lara*, concluding that instructing the jury that the prosecution does not bear the burden of disproving self-defense unconstitutionally shifts the prosecution's burden to prove that a defendant acted recklessly in crimes requiring recklessness as an element. 230 P.3d at 1231–32.

We find the reasoning of *Lara* and *Taylor* unpersuasive. While it may be true that evidence of self-defense tends to disprove recklessness, extreme indifference, and criminal negligence, the prosecution's sole constitutional burden in cases implicating self-defense and either recklessness, extreme indifference, or criminal negligence is simply to prove recklessness, extreme indifference, or criminal negligence along with the other elements of the charged crime. *See Martin*, 480 U.S. at 234, 107 S.Ct. 1098. Once the prosecution has made a prima facie case proving all the elements of the charged crime beyond a reasonable doubt, the prosecution need not do anything else to convict the defendant. *Id.* The defendant, of course, may introduce evidence of self-defense to raise reasonable doubt about the prosecution's proof of the requisite element of recklessness, extreme indifference, or criminal negligence, but the prosecution bears no burden to disprove self-defense. *See* § 18–1–704(4); *Martin*, 480 U.S. at 234, 107 S.Ct. 1098.

Accordingly, instructing the jury, pursuant to the fourth clause of section 18–1–

704(4), that the prosecution bears no burden of disproving self-defense with respect to crimes to which self-defense is not an affirmative defense is an accurate statement of Colorado law and does not improperly shift the prosecution's burden to prove recklessness, extreme indifference, or criminal negligence. So long as the trial court properly instructs the jury regarding the elements of the charged crime, a carrying instruction using the language of section 18–1–704(4) is not constitutionally erroneous. Thus, we overrule *Lara* and *Taylor* to the extent that they hold to the contrary.

## III. Conclusion

Here, it is undisputed that the trial court's elemental instruction properly set forth the elements of reckless manslaughter. Thus, there was no constitutional error in the trial court's carrying instruction stating that the People did not bear the burden of disproving that Pickering acted in self-defense.[7] Accordingly, we reverse the judgment of the court of appeals and reinstate Pickering's conviction for reckless manslaughter.

Justice MARTINEZ dissents, and Chief Justice BENDER and Justice HOBBS join in the dissent.

Justice MARTINEZ, dissenting.

Where a defendant is charged with reckless manslaughter, the majority holds that a jury instruction stating that "the prosecution bears no burden of disproving self-defense with respect to which it is not an affirmative defense is an accurate statement of Colorado law," claiming such an instruction does not improperly shift the burden of proof to the defendant. To the contrary, such a jury instruction does not accurately state the law in this case, and does shift the burden of proof to the defendant. Further, it is inconsistent with another jury instruction stating that the prosecution has the burden to prove

---

6. The court of appeals declined to address whether the statute itself was unconstitutional. *Id.* at 394.

7. The trial court's carrying instruction essentially tracked the language of section 18–1–704(4). We note, however, as did the court of appeals, that the trial court failed to explain to the jury, pursuant to the third clause of section 18–1–704(4), that it could consider evidence of self-defense in determining whether Pickering acted recklessly. That issue is not within our grant of certiorari and we therefore decline to address it.

every element of reckless manslaughter beyond a reasonable doubt, and is therefore highly misleading; thus, it should not be given.

The majority's holding assumes that when self-defense evidence is not presented as an affirmative defense, such evidence has only one constitutionally-relevant effect: it "tends" to disprove the elements of the crime. Accordingly, if such evidence only "tends" to disprove the elements of the crime, the prosecution must "simply" prove the elements of the crime and "need not do anything else to convict the defendant." *See* maj. op. at 557. Thus, if the jury is properly instructed that the prosecution must prove all the elements of the crime, and self-defense is not an affirmative defense that would create an additional element, then there is no constitutional error to also instruct the jury that the prosecution need not disprove self-defense. *See* maj. op. at 557.

To justify this approach, the majority relies heavily on how the Supreme Court assessed self-defense jury instructions in *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), essentially equating the circumstances in *Martin* with the circumstances here. *See* maj. op. at 557. But the majority's reliance on *Martin* is misplaced, as it is critically distinguishable: in *Martin*, the affirmative defense, once established, did not necessarily negate any one of the elements of the crime. That is not the case here. Unlike other element-negating defenses, evidence of self-defense in this case does more than just "tend" to disprove an element of the crime: it necessarily negates the element of recklessness. The constitutionality of the jury instruction at issue therefore cannot be resolved by just equating it with any other element-negating defense, as the majority implicitly assumes.

In *Martin*, the Court held that the state could permissibly require the defendant to prove self-defense and that no due process violation occurred by instructing the jury that the defendant had the burden to prove self-defense by a preponderance of the evidence. 480 U.S. at 233–36, 107 S.Ct. 1098. Such an instruction passed constitutional muster in part because of other instructions given to the jury. The other instructions provided that the prosecution had the burden—never shifting—to prove every element of aggravated murder beyond a reasonable doubt, and that to find the defendant guilty, none of the evidence presented by either party could raise a reasonable doubt as to any of the elements of aggravated murder. *Id.* at 233, 107 S.Ct. 1098. Without compromising the due-process sanctity of these other jury instructions, the Court acknowledged that evidence of self-defense may "tend to negate" the element of aggravated murder requiring the defendant to "purposely, and with prior calculation" take another's life.[1] *Id.* at 234, 107 S.Ct. 1098. But because the jury was properly informed of the prosecution's burden regarding the charged offense, the jury could fairly assess whether any of the self-defense evidence raised "a reasonable doubt about the sufficiency of the State's proof of the elements of the crime." *Id.*

The majority treats the element-negating defense here just as the Court treated element-negating evidence of self-defense in *Martin*, ignoring the critical difference between the two. In *Martin*, even if the prosecution had proven its case beyond a reasonable doubt, it would not have necessarily disproved any of the elements of self-defense. Indeed, the Court contemplated this scenario, observing that even if the jury was convinced beyond a reasonable doubt that the defendant committed aggravated murder, "the killing will still be excused if the elements of the defense are satisfactorily established." *Id.* In short, for the Court, certain elements of self-defense and aggravated murder would "often" overlap, but not always; no necessary relationship existed between the prosecution proving its case and disproving the defendant's self-defense evidence—evidence that could have the tendency to, but did not have to, negate the elements of the charged offense.

---

1. The Court in *Martin* noted that evidence of self-defense could negate the "purposeful killing by prior calculation" element of aggravated murder because "[i]t may be that most encounters in which self-defense is claimed arise suddenly and involve no prior plan or specific purpose to take life. In those cases, evidence offered to support the defense may negate a purposeful killing by prior calculation and design...." *Id.* at 234.

In contrast, here, by proving reckless manslaughter, the prosecution has to, as a matter of logical necessity, disprove any evidence of self-defense raised by the defendant. The majority, before inexplicably retreating behind *Martin*, appears to admit this. *See* maj. op. at 556 ("[I]t is impossible for a person to act both recklessly and in self-defense, because self-defense requires one to act justifiably, while recklessness requires one to act with conscious disregard of an unjustifiable risk." (citations omitted)).

Our precedent certainly supports this. We have noted that criminal negligence requiring a jury finding that the defendant "failed to perceive an unjustified risk that a reasonable person would have perceived in the situation," is "totally inconsistent" with a theory of self-defense. *People v. Fink*, 194 Colo. 516, 518, 574 P.2d 81, 83 (1978). This reasoning underscored our holding in *Fink* that a trial court need not give any specific instructions to jurors on self-defense where criminal negligence is charged: as a matter of logical necessity, jurors would understand that if it found the defendant acted recklessly, "they have already precluded any finding of affirmative defense." *Id.* (quoting Notes on the Use of the Colorado Jury Instructions (Criminal) § 9:7 (Manslaughter–Reckless)); *see also Case v. People*, 774 P.2d 866, 870 (Colo. 1989) ("By finding [the defendant] guilty of reckless manslaughter, the jury has found that she consciously disregarded a substantial and unjustifiable risk that [the victim] would be killed. The jury therefore rejected the contention that [the defendant] was acting in self-defense. Had the jury believed [the defendant's] testimony that she was acting in self-defense, it would not have found her to have acted recklessly." (citations omitted)).

Once this necessary, inverse relationship between a defense and the elements of the offense is established—once the prosecution must, by virtue of proving its own case, necessarily disprove self-defense evidence raised by the defendant—it has constitutional consequences. In *Patterson v. New York*, the Supreme Court held a statute that shifted to the defendant the burden to prove the affirmative defense of extreme emotional disturbance did not violate due process partly because the elements of the charged offense were separate from the affirmative defense: the affirmative defense "does not serve to negative any facts of the crime which the State is to prove in order to convict of murder. It constitutes a separate issue on which the defendant is required to carry the burden of persuasion...." 432 U.S. 197, 206–07, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The implication arising from *Patterson* is obvious: where an affirmative defense *does* negative the elements of the crime the prosecution must prove, the prosecution must carry the burden to disprove that defense. And although the Court in *Patterson* referred to affirmative defenses, under *In re Winship*'s broad mandate that the prosecution must prove beyond a reasonable doubt "every fact necessary to constitute" the charged crime, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the same logic would apply to any defense.

Justice Powell, placing *Martin v. Ohio*'s holding in the context of *Patterson*, explained the constitutional justification for why the prosecution should have the burden to disprove a defense that negates an element of the charged offense:

> If the jury is told that the prosecution has the burden of proving all the elements of a crime, but then also is instructed that the defendant has the burden of *disproving* one of those same elements, there is a danger that the jurors will resolve the inconsistency in a way that lessens the presumption of innocence. For example, the jury might reasonably believe that by raising the defense, the accused has assumed the ultimate burden of proving that particular element. Or, it might reconcile the instructions simply by balancing the evidence that supports the prosecutor's case against the evidence supporting the affirmative defense, and conclude that the state has satisfied its burden if the prosecution's version is more persuasive. In either case, the jury is given the unmistakable but erroneous impression that the defendant shares the risk of nonpersuasion as to a fact necessary for conviction.

*Martin*, 480 U.S. at 237–38, 107 S.Ct. 1098 (Powell, J., dissenting).

Although Justice Powell disagreed with the majority over whether the specific defense in *Martin* sufficiently negated an element of the charged offense so as to invoke the implication in *Patterson, see id.* at 239–40, 107 S.Ct. 1098, neither he nor the *Martin* majority undermined the implication in *Patterson* that the prosecution must carry the burden to disprove any defense that necessarily negates an element of the charged offense.[2] And the great weight of federal authority supports this proposition. *See United States v. Leahy,* 473 F.3d 401, 403 (1st Cir.2007) ("[W]e hold that where ... proof of the justification defense does not negate an element of the charged crime, the burden of proof in connection with that defense rests with the defendant."); *United States v. Leal–Cruz,* 431 F.3d 667, 671 (9th Cir.2005) ("[W]e conclude that the Due Process Clause forbids shifting the burden of proof to the defendant on an issue only where establishing the defense would necessarily negate an element that the prosecution must prove beyond a reasonable doubt under *Winship.*"); *United States v. Brown,* 367 F.3d 549, 556 (6th Cir. 2004) ("[I]f an affirmative defense bears a necessary relationship to an element of the charged offense, the burden of proof does not shift to defendant."); *United States v. Dodd,* 225 F.3d 340, 344 (3d Cir.2000) ("Although the Due Process Clause requires the government to prove all elements of the charged offense beyond a reasonable doubt, and therefore requires the government to disprove beyond a reasonable doubt any defenses that negate an element of the charged offense, there is no constitutional bar to the defendant's bearing the burden of persuasion on defenses that do not negate an element of the offense." (citations omitted)); *United States v. Deleveaux,* 205 F.3d 1292, 1298 (11th Cir.2000) ("The burden to prove or disprove an element of the offense may not be shifted to the defendant. Thus, if a defendant asserts a defense that has the effect of negating any element of the offense, the prosecution must disprove that defense be-

yond a reasonable doubt." (citations omitted)); *United States v. Unser,* 165 F.3d 755, 764 (10th Cir.1999) ("[W]hen evidence has been produced of a defense which, if accepted by the trier of fact, would negate an element of the offense, the government must bear the ultimate burden of persuasion on that element, including disproving the defense."); *United States v. Johnson,* 968 F.2d 208, 213–14 (2d Cir.1992) ("To be valid, an affirmative defense may not, in operation, negate an element of the crime which the government is required to prove; otherwise, there would be too great a risk that a jury, by placing undue emphasis on the affirmative defense, might presume that the government had already met its burden of proof. Such a presumption would, without question, violate due process."); *Wynn v. Mahoney,* 600 F.2d 448, 450–51 (4th Cir.1979) (finding constitutional error in instructing the jury that the defendant had the burden to prove self-defense, because the absence of self-defense was an element of murder that had to be proved by the prosecution).

Based on this authority, it was constitutional error for the trial court in this case to instruct the jury that the prosecution had no burden to disprove evidence of self-defense. As established above, self-defense evidence, once appropriately raised—as it was in this case [3]—necessarily negates the element of recklessness; the prosecution cannot prove recklessness without, in effect, disproving the self-defense evidence. The trial court's contrary instruction thus violated the constitutional requirements of *Patterson* and *Winship.*

Nor is the instruction saved by the trial court's general instruction that the prosecution has the burden to prove all the elements of reckless manslaughter. "[T]he giving of incompatible instructions on the burden of proof is fatal error." *Young v. Colo. Nat'l Bank of Denver,* 148 Colo. 104, 125, 365 P.2d 701, 713 (1961); *see also Barr v. Colo.*

**2.** For a good discussion of how *Patterson* and other Supreme Court precedent support this proposition, *see United States v. Leal–Cruz,* 431 F.3d 667, 670–72 (9th Cir.2005).

**3.** In line with section 18–1–704(4), C.R.S. (2010), the defendant presented evidence of self-defense

and was thus entitled to a self-defense instruction. Of course, if the defendant had not presented any evidence of self-defense, he would not have been entitled to a self-defense instruction at all, and none of the constitutional issues at issue in this case would have been implicated.

*Springs & Interurban Ry. Co.*, 63 Colo. 556, 560, 168 P. 263, 265 (1917) ("Conflicting or contradictory instructions furnish no correct guide to the jury, and the giving thereof is erroneous ...." (quotation omitted)). And this is because "[a] reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." *Francis v. Franklin*, 471 U.S. 307, 322, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). While the jury may have followed the general instruction and placed the burden to disprove self-defense evidence on the prosecution, it is entirely possible—and more likely—that the jury followed the opposite and more specific instruction that the prosecution did not have any burden to disprove the evidence of self-defense. In line with Justice Powell's reasoning, the jury might have harmonized these conflicting instructions by balancing the evidence supporting both sides and rendering its verdict based on whichever side's evidence was simply more persuasive, instead of holding the prosecution to its more rigorous burden of proof. This would be impermissible. *See Jolly v. People*, 742 P.2d 891, 898 (Colo.1987) ("The critical consideration in determining the validity of [a jury instruction] is whether a reasonable jury could have understood the instruction as relieving the state of its burden of persuasion on an essential element of the crime."). Hence, the jury instruction the majority claims is an accurate statement of the law is, in fact, unconstitutional.

Although the majority holds that no reversible error occurs where a jury is given an instruction tracking the language of section 18–1–704(4), *see* maj. op. at 557, cautious trial court judges should still decline to give such an instruction. The majority does not require that trial courts give this instruction, and neither does the statute. Section 18–1–704(4) requires trial courts to: (1) allow defendants to present evidence of self-defense; (2) give a "self-defense law instruction" where evidence of self-defense is presented; and (3) inform the jury that it may consider self-defense evidence "in determining whether the defendant acted recklessly, with extreme indifference, or in a criminally negligent manner." In contrast, although the statute states the prosecution has no burden to disprove self-defense, it does not require

that juries be so informed: "[T]he self-defense law instruction shall not be an affirmative defense instruction and the prosecution attorney shall not have the burden of disproving self-defense." *Id.*

Further, trial court judges should decline to give this instruction because it is highly misleading. Courts should not give instructions if they embody "an incorrect or misleading statement of the law." *People v. Bossert*, 722 P.2d 998, 1009 (Colo.1986). Jury instructions should not be used if their language creates "a reasonable possibility that the jury could have been misled relative to reaching a verdict." *People v. Williams*, 23 P.3d 1229, 1232 (Colo.App.2000); *see also People v. DeHerrera*, 697 P.2d 734, 740 (Colo.1985)(concluding that the "unduly confusing" jury instruction should not have been given).

By giving the jury instruction the majority declares creates no reversible error, a "reasonable possibility" certainly exists that a jury will be misled by instructions that on one hand require the prosecution to prove every element of reckless manslaughter beyond a reasonable doubt, but on the other hand state that the prosecution has no burden to disprove any self-defense evidence, even though logically, it is impossible for the prosecution to prove reckless manslaughter without in effect disproving such self-defense evidence. If, in *Fink* and *Case*, we observed that juries were capable of recognizing the necessary, inverse relationship between self-defense and recklessness or criminal negligence, there is no reason to suppose that the jury here was not capable of recognizing the same relationship. And once recognized this relationship renders the instructions inconsistent: one instruction places the burden to prove recklessness on the prosecution, but the other, by stating that the prosecution has no burden to disprove evidence necessarily negating the element of recklessness, has the effect of placing on the defendant the burden to disprove he acted recklessly. We do not know how juries will resolve this inconsistency, and we—and cautious trial court judges—should not hazard a guess.

Because the jury instruction in this case violates due process and misleads juries on

the critical issue of the prosecution's burden to prove every element of the charged offense beyond a reasonable doubt, it should not have been given. I respectfully dissent.

I am authorized to state that Chief Justice BENDER and Justice HOBBS join in this dissent.